401 So.2d 473 (1981)
Frank J. HALL, et al, Plaintiffs-Appellees,
v.
Colidge DIXON, et al, Defendants-Appellants.
No. 14547.
Court of Appeal of Louisiana, Second Circuit.
June 8, 1981.
Rehearing Denied July 15, 1981.
Weiner, Weiss, Madison & Howell, Shreveport, for plaintiffs-appellees.
Fish, Montgomery & Robinson, Springhill, for defendants-appellants.
Lawrence L. May, Jr., Vivian, Roland McKneely, Bossier City, Alfred Bullock, Shreveport, Ronald Miciotto, Bossier City, D. G. Tyler, Shreveport, for defendant-appellee.
Before MARVIN, JASPER E. JONES and FRED W. JONES, JJ.
En Banc. Rehearing Denied July 15, 1981.
JASPER E. JONES, Judge.
Plaintiffs, Frank J. Hall, Frank J. Hall, Jr., Cristine Hall, Lynn Hall Lasiter, Katherine *474 Hall Cherry, Charles B. Sentell, Jack Jorden, Jr., J. M. Harper, Jr., Haskill Bonner, M. & V. Oil, Inc., Petrol Industries, Inc., Jackson B. Davis, Alfred W. Bullock, and Lyndall Bullock Tinnin, were granted a judgment enjoining appellants, Colidge Dixon, Earl Dixon, Haston Smith, Adeline S. Stringer, Theodora S. Evans, Huey P. Dixon, Sherry Linda Williams, Renee Ann Williams, Joe Woodrow Williams, Lucille Dixon Anderson, Daniel Smith, Edith B. Dixon Novoscone, Jake Smith, and Laura Mae Smith, from interfering with plaintiffs' exploration for minerals on 120 acres of land located in Caddo Parish, Louisiana. The judgment also enjoined appellants from interfering with plaintiffs' production of any minerals they found by virtue of said exploration. The judgment also decreed that the prescription of nonuse as applicable to plaintiffs' mineral rights was suspended from November 3, 1978 (this was the date plaintiffs filed their suit) until the date the judgment became final and definitive.
Plaintiffs are mineral interest owners, lessors-royalty interest owners, and lessees-working interest owners of 81.3 mineral acres in the E-½ of the SW-¼ and the SE-¼ of the NW-¼, Sec. 35, T21N, R15W, Caddo Parish, Louisiana. Plaintiffs planned in October of 1978 to immediately drill a well on the 120 acres because they believed minerals under it were being drained by wells producing on acreage adjacent to it. Plaintiffs were also motivated to drill the well because many of plaintiffs' mineral servitudes and/or leases would expire in 1979 or 1980, and plaintiffs needed to drill on the subject property in order to maintain their mineral servitudes and/or their mineral leases.
Plaintiffs had actually alleged their servitudes would expire in 1979, apparently believing all earlier production on these servitudes had ceased in 1969. However, at trial they established there had been some production on their mineral servitudes in the fall of 1970. Plaintiffs, pursuant to their plan, had a well location surveyed and staked in October, 1978, and on October 20, 1978 secured a permit from the Department of Conservation of the State of Louisiana authorizing the drilling of the well at the staked location. Plaintiffs further secured a drilling contractor who preparatory to drilling secured the services of James Hall, an oilfield construction contractor, to level the drilling site and dig the necessary drilling pits.
Appellants are alluded to in pleadings and briefs filed in this record as part owners of the surface and minerals in the 120 acres upon which plaintiffs desire to drill. Appellant, Colidge Dixon, who contends he is owner of a 1/12th interest in said property which he contends is affected by no outstanding mineral servitudes, lives near the property. He was of the opinion that plaintiffs had no right to drill a well upon the property and for that reason he physically removed the stake which the surveyor had placed to designate the location of the proposed well. Access to the property was only available through a locked gate and Colidge Dixon had a key to this gate. When James Hall arrived at the location of the property with his bulldozer for the purpose of clearing the site and digging the pits, he was unable to get through the locked gate. He was advised by someone he talked to in the area that Colidge Dixon was going to prevent the drilling of the well and would have any equipment that he found on the property seized. The following day James Hall found Colidge Dixon and sought permission to enter the property to prepare the drilling site. Dixon refused Hall permission to enter the property and told him he would have any of Hall's equipment on the property seized by his lawyer.
Plaintiffs filed this suit on November 3, 1978 seeking to enforce their rights as co-owners to explore for and produce minerals under the 120 acres, pursuant to the provisions of LSA-R.S. 31:176[1] and 177[2].
*475 Appellants vigorously defended the action. Included among appellants' pleadings was a motion objecting to the use of summary process wherein they contested plaintiffs' right to the preliminary injunction. Plaintiffs thereafter abandoned their efforts to obtain the preliminary injunction and converted the entire proceeding to an ordinary action. After numerous delays, some of which were attributed to the motions for continuance filed by counsel for appellants, the case was tried on May 5, 1980, and the judgment appealed from was signed on August 20, 1980.
Appellants assign as error (1) the trial court's suspension of the running of prescription of the mineral servitudes when there were neither allegations nor proof that there were obstacles to their use which the servitude owners could not remove, (2) alternatively, the court erred in commencing the suspension of the running of prescription on November 3, 1978 because none of appellants did anything on that date, or thereafter, to create an obstacle to plaintiffs' use of their mineral servitude, and the trial court erred in suspending the running of prescription beyond November 16, 1978, the date set for the hearing on the preliminary injunction, and (3) the trial court erred in suspending prescription on the servitudes on property owned by persons who did nothing to create an obstacle to plaintiffs' use of their servitudes.

DID PLAINTIFFS ESTABLISH AN OBSTACLE TO THE USE OF THEIR MINERAL SERVITUDES?
The law which provides that an obstacle suspends the prescription of nonuse of a servitude is contained in the following provisions of the mineral code:
LSA-R.S. 31:59If the owner of a mineral servitude is prevented from using it by an obstacle that he can neither prevent nor remove, the prescription of nonuse does not run as long as the obstacle remains.
LSA-R.S. 31:60An obstacle to drilling or mining operations or to production of any mineral covered by an act creating a mineral servitude suspends the running of prescription as to all minerals covered by the act.
Plaintiffs proved that appellant, Colidge Dixon, who claimed the ownership of 1/12th of the 120 acres subject to their mineral servitudes, pulled up the stake that had been placed by the surveyor to designate the site of the proposed well. Plaintiffs further proved this appellant had a key to a locked gate which controlled access to the proposed well site which was located in a fenced pasture. Colidge refused to permit plaintiffs' contractor to bring in the necessary equipment to level the well site and construct the pits necessary to the drilling operation. This appellant prohibited this contractor from doing the necessary work preparatory to the drilling of the well and actively obstructed the work by pulling up the stake. Colidge admitted these facts at the trial of the case.
In Perkins v. Long-Bell Petroleum Company, 227 La. 1044, 81 So.2d 389 (1955), the court interpreted LSA-C.C. art. 792 which then provided:
"If the owner of the estate to whom the servitude is due, is prevented from using it by any obstacle which he can neither prevent nor remove, the prescription of nonusage does not run against him as long as this obstacle remains." Id. at 393.
*476 Included in the comments under LSA-R.S. 31:59 is the following statement:
"Article 59 adopts a general principle found in Article 792 of the Civil Code..."
The commentator was here recognizing that the obstacle concept in LSA-R.S. 31:59 was derived from LSA-C.C. art. 792.
In the Perkins, supra, case the court held that a suit to invalidate a mineral servitude was not an obstacle to its use which would suspend the running of prescription under LSA-C.C. art. 792. The court stressed in reaching this conclusion that the land owner who was seeking to invalidate the mineral servitude by litigation
"... did not at any time deny to defendant [the servitude owner] free access to the land for exploration purposes." Id. at 393.
The court was here recognizing that obstruction to access for the purpose of exploration would have been an obstacle which would have suspended the running of prescription.
Plaintiffs could not have removed the obstruction created by the locked gate and the denial of access asserted by Colidge Dixon any legal way other than by the suit which they instituted. We conclude that when appellant, Colidge Dixon, denied access to the drill site and destroyed evidence of the location, he created an obstacle to the use of plaintiffs' servitudes within the contemplation of LSA-R.S. 31:59.
WAS THE TRIAL COURT CORRECT IN COMMENCING THE SUSPENSION OF THE RUNNING OF PRESCRIPTION ON NOVEMBER 3 AND EXTENDING THE SUSPENSION UNTIL THE JUDGMENT GRANTING THE PERMANENT INJUNCTION BECAME FINAL?
Appellants contend that the suspension should not have commenced on November 3, 1978 because there was no evidence that any obstacle existed on or after that date. The evidence established the action of Colidge Dixon in creating the obstacle, which occurred in the later part of October only a few days before the suit was filed on November 3, was contemplated by Colidge as being a permanent prohibition of access to the well site. Colidge in effect destroyed the evidence of the exact location of the proposed site when he removed the stake placed by the surveyor. It was Colidge's position at the time he denied access to the well site, and at the time of trial on May 5, 1980, that plaintiffs had no servitudes entitling them to access to the drill site because the servitudes had prescribed in 1976 for the reason there had been no use of them in 10 years. Colidge was not denying access on a temporary basis. Colidge erroneously believed that the last production upon the 120 acres had occurred in 1966, when in fact the last mineral production from the servitudes that form the basis for the rights plaintiffs here assert, was established at trial to have been 1970. The obstacles created by Colidge were continuous ones which will only be removed when the judgment permanently enjoining him from denying plaintiffs access to the property subject to their mineral servitudes becomes a final enforceable judgment.
The period of suspension of the running of prescription set forth in the judgment is correct.
WAS THE COURT RIGHT IN SUSPENDING PRESCRIPTION ON THE RUNNING OF PRESCRIPTION ON PLAINTIFFS' SERVITUDE EFFECTIVE AGAINST THOSE APPELLANTS WHO HAD CREATED NO OBSTACLE?
Appellants contend there was no evidence that any of them, except Colidge Dixon, created an obstacle to the use of plaintiffs' servitudes, and for that reason the running of prescription should have been suspended only insofar as it affected the interest of Colidge Dixon in the 120 acres.
A review of the provisions of LSA-R.S. 31:59 reveals that prescription of nonuse is suspended because there is an obstacle that prevents the owner of the servitude from using it. There is no requirement in the statute that the obstacle be created by all or any of the owners of the land subject to *477 the servitude. There could very well be an obstacle that was not created by the owner of the land subject to the servitude which would prevent the owner of the servitude from using it and would therefore suspend the running of prescription of nonuse under the provisions of LSA-R.S. 31:59, even though the owner of the land subject to it had nothing to do with creating the obstacle.
The trial court correctly suspended the running of prescription of nonuse against the servitudes owned by plaintiffs on the 120 acres without limiting the suspension to the interest in the property owned by Colidge Dixon.
Judgment is AFFIRMED at appellants' costs.
NOTES
[1] LSA-R.S. 31:176"A co-owner of a mineral servitude may act to prevent waste or the destruction or extinction of the servitude, but he cannot impose upon his co-owner liability for any costs of development or operation or other costs except out of production. He may lease or otherwise contract regarding the full ownership of the servitude but must act at all times in good faith and as a reasonably prudent mineral servitude owner whose interest is not subject to co-ownership."
[2] LSA-R.S. 31:177"A co-owner of the lessee's interest in a mineral lease may not independently conduct operations or, except as provided in this Article and Article 171, deal with the interest without the consent of his co-owner. He may act to prevent waste, destruction, or termination of the lease and to protect the interest of all, but cannot impose upon his co-owner liability for any costs or expenses except out of production. In so acting he must act in good faith and must deal with the interest of the remaining owner or owners in the manner of a reasonably prudent lessee whose interest is not subject to co-ownership."