501 So.2d 1049 (1987)
Mrs. Dorothy Williams CORLEY and Twin City Gas Company, Plaintiffs-Appellees,
v.
Alfred McKinnley CRAFT and Mrs. Carol Massingale Craft, Defendants-Appellants.
No. 18377-CA.
Court of Appeal of Louisiana, Second Circuit.
January 21, 1987.
Writ Denied March 13, 1987.
Hudson, Potts & Bernstein by James A. Rountree, Monroe, for defendants-appellants.
Madison, Garrept, Brandon, Hamaker, Wilson & Tugwell by John W. Wilson, Monroe, for plaintiffs-appellees.
Before HALL, SEXTON and LINDSAY, JJ.
SEXTON, Judge.
The defendants-appellants, Mr. Alfred M. Craft and Mrs. Carol M. Craft, appeal from a judgment notwithstanding the jury verdict(JNOV) entered by the trial judge after a jury trial in which the jury found for the defendant. The plaintiffs-appellees are Mrs. Dorothy Williams Corley and Twin *1050 City Gas Company. The trial judge found that the jury incorrectly concluded that the evidence did not establish that the defendant created an obstacle within the meaning of the Louisiana Mineral Code Article 59. Accordingly, the trial judge granted the JNOV. We amend and as amended, affirm.
The facts are not in dispute. In 1972, Mrs. Dorothy W. Corley, reserving the mineral servitude, sold a tract of land in Ouachita Parish to Mr. Alfred M. Craft. In 1973, Mrs. Corley granted a mineral lease on the servitude tract to Mr. C.C. Wicker. Mr. Wicker then assigned the lease to Franks Petroleum, Inc. The following year, Franks Petroleum, Inc. drilled a gas well, which was commercially productive and thereafter shut-in while awaiting a pipeline connection.
This well, the Corley No. 1 Well, remained shut-in throughout the remainder of the 1970s and early 1980s. In March of 1983, the Corley lease was farmed out to Twin City Gas Company and later was extended by written agreement.
In 1984, plaintiff, Twin City Gas Company, sought to produce the Corley No. 1 Well. However, the defendant, Mr. Craft, refused to grant a pipeline right-of-way. Furthermore, Mr. Craft offered to give an adjacent landowner an interest in the Corley No. 1 Well if that landowner would also refuse to grant a pipeline right-of-way to the plaintiffs. Twin City decided that the servitude would expire for non-use before they could expropriate a right-of-way and produce the well. Therefore, they decided to drill another well, the Corley No. 2 Well. The representatives of Twin City Gas Company believed that the servitude would prescribe on August 11, 1984, since that was the day in 1974, as reflected by the Monroe Conservation Office record, that the Corley No. 1 Well was tested and found to be ready to commercially produce. At trial, the parties stipulated that the actual prescription date was August 16, 1984.
Twin City Gas Company staked a location and obtained a drilling permit from the Louisiana Commissioner of Conservation so that a well could be drilled on the Corley servitude tract. Representatives of Twin City went to the defendant on August 6th and advised him that they were coming onto the property on August 7th to commence drilling operations. With this knowledge, the defendant that same day began digging out the only access road to the servitude property. Thus, Twin City was prevented from entering the property for the purpose of drilling a gas well.
A representative of Twin City Gas Company offered to hire or pay Mr. Craft to reconstruct the access road. Mr. Craft refused the offer. Instead, Mr. Craft suggested a new location for the construction of an access road, and on August 7th Twin City Gas Company began building the new access road. Mr. Craft then contacted Mr. Cromartie, who had begun hauling dirt for Twin City, and asked him not to work for Twin City. Mr. Cromartie responded that he was obligated to haul dirt and in fact did assist Twin City.
Twin City worked around the clock for three days trying to construct the new access road. The new access road was finally completed at 2:00 a.m. on the morning of August 9th. That same morning, Twin City had a drilling rig arrive on Mr. Craft's property. However, Mr. Craft already had blocked the newly completed access road with a large bulldozer and a backhoe.
When Mr. Craft was presented with an amended drilling permit, he refused to remove the heavy equipment blocking the access and attempted to justify his actions by claiming that the amended drilling permit had not been signed by the Commissioner of Conservation of the State of Louisiana. Thus, representatives of Twin City Gas Company flew down to Baton Rouge, Louisiana and obtained the signature of the Commissioner of Conservation on the amended drilling permit. Upon returning to the drill site in the late afternoon of August 9th with an executed permit, Twin City Gas Company was again denied access to the new location and was hand delivered a letter from Mr. Craft's attorney. The *1051 letter stated that access was being denied because operations at the permitted location might be in violation of the laws of Louisiana and the regulations of the Department of Environmental Quality.
On the morning of August 10th, Mr. Doug Wheelington of the Monroe Office of Environmental Quality received a phone call from his supervisor in the Baton Rouge office informing him of a complaint he received the previous day from Mr. Craft's attorney concerning the drilling of a gas well on a solid waste disposal site. Thereafter, Mr. Wheelington visited the proposed drill site and met with Mr. Craft. Mr. Craft informed Mr. Wheelington that he had been dumping garbage and other waste materials on his property for approximately three years. Following this interview, Mr. Wheelington submitted a report to the Baton Rouge office. Then, an injunctive order was issued in Baton Rouge against Twin City Gas Company, which received this order by hand delivery at approximately the same time. A few hours later, the drilling rig, which had been on the road adjacent to the drill site through the night of August 9, 1984, left the drill site. Likewise, Mr. Craft removed the heavy equipment that was blocking the access to the drill site.
On August 10, 1984, Mrs. Corley and Twin City Gas Company filed suit against Mr. and Mrs. Craft seeking damages, injunctive relief and a declaration that prescription had been suspended. In October of 1985, this case was tried by a jury who returned a verdict in favor of the defendants-appellants. Thereafter, Mrs. Corley and Twin City Gas Company moved for a judgment notwithstanding the verdict or a new trial. The trial judge granted judgment JNOV on May 12, 1986. The defendants-appellants now appeal the JNOV.
The trial court in its reasons for judgment stated that the evidence overwhelmingly established that the defendant created an obstacle within the meaning of the Louisiana Mineral Code Article 59. The trial court noted that all the evidence and reasonable inferences were considered in a light most favorable to the non-moving party, and then concluded the following:
The issue presented to the jury, of course, was simply whether Craft prevented plaintiffs from using the mineral servitude by an obstacle. Based on the evidence and the law, clearly he did. His cutting or excavating of the only suitable road into the tract on August 6, 1984, left plaintiffs without any practical access to the then proposed well site. After plaintiffs completed construction of another avenue of entrance by working on a 24-hour-per day basis, he again actively obstructed the entry of plaintiffs' drilling equipment and continued to do so until sometime during the late morning of August 10. After his assertion that the amended drilling permit had been improperly executed was met with a total response, he continued on August 9 to block access while pronouncing a new basis for his obstruction, even though no direct authority then existed for his actions.
Appellants assert two assignments of error on appeal. First of all, appellants contend that although an obstacle to the use of the mineral servitude existed on August 7, 1984, this obstacle did not prevent the use of the servitude. Appellants argue that the appellees made no serious effort to use the servitude prior to August of 1984. Moreover, they contend that between August 10, 1984, and the end of the prescriptive period, August 16, 1984, no obstacle existed which prevented the use of the servitude. Appellants assert that the compliance order issued by the Secretary of the Louisiana Department of Environmental Quality cannot be construed as an obstacle.
In their second assignment of error, appellants contend that the trial court erred in extending the prescriptive period 120 days after the judgment in this case becomes final. Appellants argue that even if an obstacle were created which prevented the use of the servitude on August 7 through August 10, and even if that obstacle were such that it could not be prevented or removed, and that even if it had *1052 the effect of suspending prescription, the most which could be said for the position of the plaintiffs-appellees is that liberative prescription accrued on or about August 20, 1984.
The law applicable in this case is found in the Louisiana Mineral Code R.S. 31:59 and R.S. 31:60, which provide as follows:
§ 59. Suspension of prescription by obstacle
If the owner of a mineral servitude is prevented from using it by an obstacle that he can neither prevent nor remove, the prescription of nonuse does not run as long as the obstacle remains.
§ 60. Suspension effective as to all minerals
An obstacle to drilling or mining operations or to production of any mineral covered by an act creating a mineral servitude suspends the running of prescription as to all minerals covered by the act.
This court applied these same mineral code articles in a factually similar situation in the case of Hall v. Dixon, 401 So.2d 473 (La.App.2d Cir.1981). In that case, the plaintiffs proved that the appellant, Mr. Dixon, pulled up a stake that had been placed by the surveyor to designate the site of the proposed well. The plaintiffs further proved that Mr. Dixon had a key to the locked gate which controlled access to the proposed well site which was located in a fenced pasture. Mr. Dixon admitted that he refused to permit plaintiffs' contractor to bring in the necessary equipment to level the well site and construct the pits necessary to the drilling operation. Mr. Dixon prohibited this contractor from doing the necessary work preparatory to the drilling of the well and actively obstructed the work by pulling up the stake. Thereafter, plaintiffs filed a suit similar to the suit filed in the instant case.
This court in Hall v. Dixon, supra, stated at page 476 of its opinion:
Plaintiffs could not have removed the obstruction created by the locked gate and the denial of access asserted by Colidge Dixon any legal way other than by the suit which they instituted. We conclude that when appellant, Colidge Dixon, denied access to the drill site and destroyed evidence of the location, he created an obstacle to the use of plaintiffs' servitude within the contemplation of LSA-R.S. 31:59.
In the instant case, appellees proved that appellant, Mr. Craft, refused to grant a pipeline right-of-way which would allow gas to be transported from the Corley No. 1 Well. Further, appellees showed that on August 6, 1984, Mr. Craft knew that Twin City was going to drill the next day and Mr. Craft proceeded to cut the only access road to the property. Then, on August 9, 1984, Mr. Craft blocked the entrance way to the drilling rig before he had any knowledge that the plaintiffs had obtained an amended permit. Appellees further showed that Mr. Craft was able to continue denying access to the property thereafter based on the fact that the permit was invalid because it had not been signed in Baton Rouge. When the appellants returned from Baton Rouge with a signed permit on that same day, Mr. Craft had his attorney contact the Environmental Quality officials in Baton Rouge and confess that Mr. Craft had been dumping garbage and other waste on his property in violation of the Louisiana environmental laws. Finally, on August 10, an injunctive order was issued by the Department of Environmental Quality and thus appellees continued to be denied access to the property. Mr. Craft did not dispute these facts at the trial of the case.
Appellants assert that any obstacle which might have existed did not prevent the use of the servitude prior to August 10th. Furthermore, appellants contend that no obstacle existed between August 10th, after Mr. Craft removed the heavy machinery, and August 16th, the end of the prescriptive period.
To the contrary, appellees could not have removed or prevented this continuous series of obstacles created by the cutting of the only access, the blockage by the heavy machinery, and the attainment of the injunction *1053 order. While Twin City was not physically obstructed from obtaining access to the servitude tract after Mr. Craft removed the heavy equipment from the entrance way to the servitude tract on August 10th, the remaining injunction order continued to legally prevent appellees from obtaining access to the property before the expiration of the prescriptive period on August 16th.[*]
In view of all the evidence, the trial court concluded that an obstacle within the meaning of LSA-R.S. 31:59 was created. Accordingly, the trial court granted the JNOV. In its reasons for judgment, the trial court correctly articulated the standard for the granting of a JNOV.
In deciding upon such a motion, the Court is called to consider all the evidence and reasonable inferences in a light most favorable to the non-moving party. When the facts and inferences favor that party so strongly and overwhelmingly that the Court believes that reasonable persons could not arrive at a contrary verdict, the option should be granted. On the other hand, if there is substantial evidence of such quality and weight that reasonable and fair minded persons in the exercise of impartial judgment might reach different conclusions, the motion should be denied. In applying this standard, the Court is not called to weigh the evidence, pass on the credibility of witnesses, or substitute its factual judgment for that of the jury. Blum v. New Orleans Public Service, Inc., 469 So.2d 1117 (4th Cir.1985).
We agree that under the particular circumstances of this case, a continuous chain of obstacles within the contemplation of LSA-R.S. 31:59 was created, thereby suspending the accrual of liberative prescription. Thus, we find that the trial court, applying the correct standard, did not err in granting the JNOV.
In their second assignment of error, appellants contend that the trial court erred in extending the servitude for 120 days beyond final judgment. Essentially, appellants make two arguments in support of this contention. First of all, appellants argue that appellees could have drilled during the pendency of the devolutive appeal since the LSA-C.C.P. Art. 3612 provides that a judgment shall not be suspended during the pendency of an appeal unless the court in its discussion so orders. We find no merit in this contention because the trial court specifically granted a 120-day extension period from the date of final judgment.
We do find merit in this contention. When appellees were in the process of entering defendants-appellants' premises, only approximately ten days remained on the servitude. However, obviously there is significant "gear up" time before one enjoying a mineral servitude can be prepared to commence drilling operations. This factor was obviously recognized by the trial court in suspending the prescription of non-use running against the servitude for a period of 120 days. The language of LSA-R.S. 31:59 considered, and contrasted to the necessity for plaintiffs to "gear up," we determine that the appropriate period of extension is 45 days.
In conclusion, the judgment appealed is amended to change the period that the prescription of non-use running against the servitude is suspended after the finality of judgment from 120 days to 45 days. In all other respects, the judgment appealed is affirmed. All costs of these proceedings are to be borne by appellants.
AMENDED and AS AMENDED, AFFIRMED.
NOTES
[*] We note that there is no requirement in the statute that the obstacle be created by the owner of the land. Hall v. Dixon, supra. Certainly it can be said the defendant significantly contributed to the existence of the latter impediment.