571 So.2d 718 (1990)
Dorothy Williams CORLEY, et al. (Twin City Gas Company), Plaintiff/Appellee,
v.
Alfred McKinnley CRAFT, et ux., Defendants/Appellants.
No. 21999-CA.
Court of Appeal of Louisiana, Second Circuit.
December 5, 1990.
*719 Hudson, Potts & Bernstein by James A. Rountree, Monroe, for defendants/appellants.
Shotwell, Brown & Sperry by John W. Wilson, Monroe, for plaintiff/appellee.
Before FRED W. JONES, Jr., SEXTON and LINDSAY, JJ.
FRED W. JONES, Jr., Judge.
Defendants, Alfred and Carol Craft, appealed the judgment of the trial court awarding damages to plaintiff, Twin City Gas Company, (Twin City) for defendants' creation of an obstacle to plaintiff's exercise of a mineral servitude. Defendants contend the trial court erred in:
1) Permitting plaintiff to pursue a claim for damages which it did not suffer;
2) Granting judgment to plaintiff for damages suffered by a third party; and,
3) Awarding judgment against defendant, Carol Craft.
The factual context of this litigation was set forth in our opinion in Corley v. Craft, 501 So.2d 1049 (La.App. 2d Cir.1987), writ denied, 503 So.2d 18 (La.1987), wherein we affirmed the trial court judgment holding that the actions of the Crafts created a legal obstacle to plaintiff's use of a mineral servitude. During the course of the proceedings in the trial court, the parties stipulated that the initial trial would be limited to the question of the continued validity of the mineral servitude and reserved to plaintiff the right to seek damages at a later date.
Subsequently, Twin City filed a motion for summary judgment on its claim for *720 damages, contending it was entitled to $8678.19. After defendants filed an opposition to the motion, it was overruled.
Defendants thereafter filed an exception of no right of action, asserting plaintiff did not expend any funds and, accordingly, could not have been damaged. This exception was also overruled.
At the trial on this matter, Kyle Hairston, a former partner in Twin City, testified as to all the expenses incurred by plaintiff and further testified there was an agreement with Phillip McDaniel by which McDaniel would receive 50% of the production from Corley # 1 and # 2, wells located on the servitude tract, in return for furnishing all the financing in order to drill Corley # 2. Hairston stated that McDaniel furnished $20,000 in funds for drilling. These funds were placed in an escrow account of a law firm and an attorney disbursed the funds. Expenses incurred by plaintiff as a result of the Crafts' actions included the purchase of dirt, rental of equipment, hiring sheriff's deputies to protect the drill site, hiring a drilling contractor and a relocation fee by a surveyor. Plaintiff incurred travel expenses in flying a representative to Baton Rouge to get a drilling permit signed and also paid a fee for an amended drilling permit. Hairston contended that virtually all the expenses incurred in the drilling of Corley # 2 were paid from funds provided by McDaniel except for one check from plaintiff in the amount of $75 to the Office of Conservation for the amended permit.
After reviewing the evidence, the trial court awarded judgment in favor of plaintiff and against defendants for $7238.93. It noted the agreement between plaintiff and McDaniel wherein McDaniel would finance the drilling of Corley # 2 and receive a 50/50 split of net production income from this well and any other well located on the leased tract. Pursuant to this contract, McDaniel advanced $20,000 from which plaintiff was forced to expend certain funds because of the actions of defendants. The court stated it did not view the source of the funds expended by plaintiff as determinative of the issue of whether or not plaintiff was entitled to repayment. The court found the money was furnished to plaintiff by McDaniel for payment of the cost of drilling and completing the well and that plaintiff gave valuable consideration under its contract with McDaniel. He was to be repaid and profit from the production runs from the Corley wells. Due to defendants' actions, Corley # 2 was not drilled and there was no production from Corley # 1. Thus, plaintiff owed McDaniel recoupable expenses. Further, McDaniel did not own a present interest in the Corley lease and did not have a cause of action against defendants. Therefore, plaintiff was the proper party to seek reimbursement of the money it had expended. The court agreed with defendants that they were not liable for the $509.26 payment to Fleeman Aviation and $930 stand-by time fee paid to Kodiak Drilling. It stated these expenses were incurred by plaintiff in obtaining a proper permit to drill from the Office of Conservation and plaintiff did not prove these particular expenses were caused by defendants' action in obstructing the mineral servitude.
Defendants thereafter filed a motion for a new trial alleging plaintiff did not sustain the loss for which judgment was awarded and there was no evidence in the record that Carol Craft did anything to cause damages to plaintiff. Defendants stated they were no longer married. The motion for a new trial was denied by the trial court.

Right to Recover Damages
On appeal, defendants contend plaintiff has no right of action to enforce McDaniel's claim against them. Defendants note that pursuant to the agreement between plaintiff and McDaniel, $20,000 was placed in the trust account of a law firm and an attorney signed most, if not all, the checks disbursing those funds. McDaniel's agreement to fund the drilling costs was in exchange for plaintiff's agreement to pay him 50 percent of the net revenues from production on the lease. Defendants further note that plaintiff is not obligated to repay McDaniel for these expenses. Defendants argue that if McDaniel had paid plaintiff for an interest *721 in the lease or if McDaniel had lent the funds to plaintiff, plaintiff would have incurred and paid expenses which might justify the claims which it had asserted against defendants. However, McDaniel's payment of expenses as described above could not have resulted in any loss to plaintiff and as it had suffered no damages, it should not be permitted to recover damages from defendants. Defendants assert the record contains no evidence whatsoever of any legal basis upon which plaintiff could assert a claim against them to recover expenses paid by McDaniel in the unsuccessful effort to achieve production from the Corley servitude.
It is elementary that, as a general rule, a plaintiff in a civil action bears the burden of proving each of the elements of his claim by a preponderance of the evidence. To have the standing to sue, plaintiff must assert and prove an adequate interest in himself, which the law recognizes, against a defendant having a substantial adverse interest. The law is clear and well-settled that an action can only be brought by a person having a real and actual interest in that which he asserts. The plaintiff must prove that he has some interest in prosecuting the suit in order to establish his right to recover damages, just as he must prove any other essential allegation of the petition. La.C.C.P. Art. 681. Lambert v. Donald G. Lambert Construction Company, 370 So.2d 1254 (La.1979); State v. Danzy, 527 So.2d 68 (La.App. 3d Cir.1988), writ denied, 528 So.2d 153 (La. 1988); Bruneau v. Edwards, 517 So.2d 818 (La.App. 1st Cir.1987), and Smith v. East Baton Rouge Parish, 509 So.2d 24 (La. App. 1st Cir.1987), writ granted and case remanded, 510 So.2d 1 (La.1987), appeal after remand, 515 So.2d 632 (La.App. 1st Cir.1987), writ denied, 515 So.2d 1100 (La. 1987).
As noted above, plaintiff entered into an agreement with McDaniel whereby McDaniel would provide funding for the drilling operations in exchange for 50% of the net production income from the Corley leasehold tract. Defendants contend that because of the nature of this agreement by which funds for drilling were paid by a third party, plaintiff has no right of action against them to recover the funds so expended. This argument is without merit.
As the mineral lessee, plaintiff owned the right to drill upon the property and the right to drill Corley # 2, which drilling was obstructed by defendants. Because defendants interfered with plaintiff's rights granted to it under the mineral lease, plaintiff is entitled to recover damages from defendants. One measure of those damages is the sum of money which was expended by or on behalf of plaintiff in the unsuccessful effort to drill Corley # 2. The fact that money expended by plaintiff was derived from an agreement with a third person is of no consequence and is irrelevant to the issue of the right to recover those expenses. As a practical matter, plaintiff parted with a valuable asset to obtain this funding from McDaniel and part of those funds have now been depleted due to defendants' actions. If plaintiff ultimately has to return the money to McDaniel, it must be able to recover these funds from defendants to be able to meet this obligation. On the other hand, if plaintiff is entitled to keep the funds which it received from McDaniel, plaintiff is entitled to recover that portion of funds expended in the aborted drilling operation since that presumably would form a part of the price which plaintiff received from the sale to McDaniel of 50% of the net production income from the leasehold property. Thus, regardless of whether or not plaintiff is obligated to return the funds to McDaniel or to keep them for its own benefit, it has suffered an actual loss and is entitled to recover those funds. In any event, implicit in the contract between plaintiff and McDaniel is an obligation of plaintiff not to squander or unnecessarily waste any of McDaniel's funds. This implicit obligation to use the funds prudently gives plaintiff the right and obligation to pursue this litigation and to recover any funds expended by it in attempting to drill the well.

Liability of Carol Craft
Defendants contend the record is devoid of evidence of any fault on the part *722 of Craft's ex-wife, Carol Craft, and thus the trial court erred in awarding judgment against this defendant. This argument is without merit.
As noted above, in a separate appeal, Corley v. Craft, supra, this court affirmed the judgment of the trial court against defendants, Alfred and Carol Craft, finding that their actions had created a legal obstacle to plaintiff's use of the servitude tract. We find the previous resolution of that judgment by this court is dispositive of the liability of defendant, Carol Craft, for damages in this matter as she has been adjudged to be legally responsible for the obstruction of plaintiff's exercise of its rights under the mineral servitude.
In any event, the record reflects this property was acquired by defendant, Alfred Craft, from Mrs. Corley in 1972. The deed shows that at this time defendant was married to Carol Craft. There is no reservation in the deed that the property was being purchased as separate property. Therefore, in accordance with La.C.C. Art. 2340, the property is presumed to be community property. This deed was introduced into evidence and established a prima facie case that the tract of land was an asset of the community existing between the parties. Although defendants contend they are divorced, there was no evidence introduced which established the date of divorce or the date the community regime was terminated. Nor was any evidence introduced to establish this property was separate in nature at the time of the alleged tortious conduct. In the absence of such proof, the trial court did not err in concluding this tract was in fact a community asset on the dates these torts were committed.
Under Section 8 of the Louisiana Mineral Code, a landowner may use and enjoy his property in the most unlimited manner for the purpose of discovering and producing minerals. Thus, upon expiration of a mineral servitude the mineral rights revert to the owner/owners of the land. Therefore, had Alfred Craft been successful in his efforts to prevent plaintiff from exercising its rights under the mineral servitude, that servitude would have prescribed and mineral rights to the property would have reverted to the owners, Alfred and Carol Craft. La.C.C. Art. 2360 provides that an obligation incurred by a spouse during the existence of a community property regime for the common interest of the spouses or for the interest of the other spouse is a community obligation. La.C.C. Art. 2361 further provides, in pertinent part, that all obligations incurred by a spouse during the existence of a community property regime are presumed to be community obligations. Therefore, it is clear under the particular circumstances of this case that the tortious conduct of defendant, Alfred Craft, would have ultimately benefited the community by causing the mineral rights to revert to defendants upon prescription of the servitude for non-use so that such conduct was for the common interest of the spouses and is a community obligation. For this reason, the trial court did not err in concluding that defendant, Carol Craft, was liable for damages.

Decree
For these reasons, the judgment of the trial court is AFFIRMED, at defendants' costs.